CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
For Roanoke
MAY 2 8 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| LOUIS ROY CHAPMAN, | ) |
| | ) Case No. 7:12-cv-00389 |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| ROMA WILLIS, <u>et. al.</u>, | ) |
| | ) **By: Hon. Jackson L. Kiser** |
| **Defendants.** | ) **Senior United States District Judge** |

Louis Roy Chapman, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983. Chapman names as defendants Roma Willis, Lt. M. Peters, Tracy Lawhorn, Laura Pedersen, Lt. Adkins, William Clark, Nichole Linamen, W.D. Jennings, Lt. LaPrade, Meadows and the Commonwealth of Virginia.[1] Chapman alleges in his complaint that defendants violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as the Prison Rape Elimination Act ("PREA"), the Virginia Department of Corrections ("VDOC") Operating Procedures, and Virginia statutes. The defendants have filed a motion for summary judgment and Chapman has responded, making this matter ripe for disposition. Upon consideration of this action, I find that the defendants' motion for summary judgment should be granted in part and denied in part, as follows.

I.      Facts

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Matsushita Elec.</u>

---

[1] To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Therefore, the Commonwealth of Virginia is not an appropriate defendant in a § 1983 action.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also MLC Auto., LLC, v. Town of S. Pines, 532 F.3d 269, 273 (4th Cir. 2008).  Chapman asserts various claims against the defendants, all allegedly connected to or arising from defendant Roma Willis' romantic pursuit and sexual abuse.  Chapman claims that on various occasions, beginning in September 2010, Willis talked to him and/or touched him in a sexual manner.  Thereafter, the other defendants acted to cover up Willis' inappropriate behavior, including forbidding him from speaking with Willis and certain medical professionals, housing him in segregation and ultimately transferring him from Augusta Correctional Center ("Augusta") to Powhatan Correctional Center ("Powhatan").  Specifically, Chapman brings the following claims:

(1) During the period from September 2010 through April 2011, defendant Willis spoke to Chapman in a sexual manner and sexually touched him in violation of his constitutional rights under § 1983, PREA, VDOC Operating Procedures and Virginia statutes.

(2) Defendant Peters told Chapman that he could not talk to Willis, or he would be placed in segregation, in violation of Chapman's rights to free speech and due process under the First and Fourteenth Amendments.

(3) Defendant Lawhorn told Chapman that he could not talk to Willis, or he would be placed in segregation, in violation of Chapman's rights to free speech and due process under the First and Fourteenth Amendments.

(4) Defendant Pederson, head psychologist at Augusta, refused to allow Chapman to see Dr. Saathoff, a psychiatrist, in violation of Chapman's rights under the Eighth Amendment.

(5) (a) Defendant Adkins sent Chapman to segregation in violation of his rights under the Eighth Amendment.

(b) Defendant Clarke yelled "I don't care about you.  I don't care if you die" at Chapman and slammed the flap on his cell door, causing Chapman to suffer severe chest pains, in violation of his rights under the Eighth Amendment.

(6) Defendant Linamen, Assistant Warden at Augusta:

(a) lied to Chapman when she told him that the Special Investigative Unit investigation regarding his claim against Willis was completed;

(b) placed Chapman in segregation in violation of his rights under the Eighth Amendment; and

(c) transferred Chapman from Augusta to Powhatan in violation of his due process rights and in retaliation for exercising his First Amendment rights.

(7) Defendant Jennings, Warden at Augusta:

(a) lied to Chapman when he told him that the Special Investigative Unit investigation regarding his claim against Willis was completed;

(b) placed Chapman in segregation in violation of his rights under the Eighth Amendment; and

(c) transferred Chapman from Augusta to Powhatan in violation of his due process rights and in retaliation for exercising his First Amendment rights.

(8) Defendant LaPrade forced Chapman to walk around unaided with an injured foot and exercise in unsanitary recreation cages, in violation of the Eighth Amendment. LaPrade is also responsible for the actions of other defendants which violated the Eighth Amendment, including defendants placing Chapman in segregation, defendant

Pedersen's refusal to allow Chapman to see Dr. Saathoff, and defendant Clarke's

yelling and slamming the flap on Chapman's cell door.

(9) Defendant Meadows, Medical Supervisor, failed to diagnosis Chapman's fractured

ankle for 35 days, in violation of the Eighth Amendment.[2]

In his Complaint, Chapman states that all claims are against the defendants in their personal and

professional capacities and seeks money damages.

II.      Analysis

A.   Exhaustion of Administrative Remedies

An  award of summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary

judgment, it must be "such that a reasonable jury could return a verdict for the non-moving

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  In making this determination, "the court is required to view the facts and draw

reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d

791, 798 (4th Cir. 1994).

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a

prisoner cannot bring a civil action concerning prison conditions until he has first exhausted

---

[2] At the end of his complaint, Chapman states that all the other defendants aided and abetted Willis in her alleged sexual abuse and also generally asserts that all the defendants agreed to place him in administrative segregation. However, a court need not accept plaintiff's "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996).  A complaint does not suffice "if it tenders 'naked assertion[s]'devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (citation omitted).   Chapman has not alleged that any of the other defendants assaulted him, or that he asked them to protect him from Willis.  Further, he has not provided any support for his conclusion that all defendants agreed to place him in segregation. Accordingly, to the extent that Chapman is attempting to bring a separate claim regarding these allegations, it is dismissed for failure to state a claim.

available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. § 1997e(a)). The § 1997e(a) exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or  some other wrong," and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.2008).  Accordingly, on summary judgment, the district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (citing Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). The burden of showing that administrative remedies were unavailable lies with the plaintiff.  See, e.g., Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir.2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing Moore, 517 F.3d at 725).

Defendants offer a copy of Operating Procedure 866.1, which sets out the procedure inmates in Virginia Department of Corrections (VDOC) prisons must follow to exhaust administrative remedies in compliance with § 1997e(a). (Docket No. 52-1) Defendants state that Chapman has not exhausted his administrative remedies for claims 4, 5, 6(a) and (b), 7 (a) and (b), 8 and 9.  In support, defendants have submitted the declaration of S. Conner, the Institutional

Ombudsman at Augusta, who states that review of Chapman's grievance records indicates that he did not file any regular grievances regarding these claims.

In response to defendants' motion for summary judgment, Chapman asserts that he has filed a "Statement of Exhaustion" as well as an Affidavit with exhibits, stating he has exhausted his administrative remedies. (Docket 65-1, p. 3) However, Chapman makes no specific arguments regarding claims 4, 5, 6(a) and (b), 7 (a) and (b), 8 and 9 and a review of his Affidavit and the attached grievance forms reveals no grievances filed about these claims.

Because Chapman fails to offer specific evidence contradicting defendants' evidence that he failed to follow the mandatory requirement of fully and properly exhausting claims 4, 5, 6(a) and (b), 7 (a) and (b), 8 and 9, these claims are barred under § 1997e(a) from consideration in this § 1983 proceeding. Accordingly, I will grant the defendants' motion for summary judgment on these claims and dismiss them without prejudice.

B. Claim 1

In claim 1, Chapman alleges that, beginning in September 2010 and continuing until April 2011, Willis sexually and romantically pursued him in violation of his constitutional rights under § 1983, PREA, VDOC Operating Procedures and certain Virginia criminal statutes.[3] Specifically, Chapman states that Willis made sexual comments, including telling Chapman she

---

[3] Chapman claims Willis' actions violate Virginia Code §§ 18.2-67.4 (Sexual Battery), 18.2-67.10 (General Definitions, and 18.2-60.3 (Stalking). However, "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Chapman also claims that Willis' actions violated VDOC Operating Procedures, and defendants acknowledge that fraternization is against VDOC policy. However, violations of state laws or regulations by state officials do not provide a basis for constitutional claims under §1983. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990). Section 1983 was intended to protect only federal rights guaranteed by federal law and not tort claims for which there are adequate remedies under state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Plaintiff's state law claims are thus not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). All such claims will be dismissed without prejudice accordingly.

6

wanted him to have sex with her, and touched him in a sexual manner on multiple occasions, including "rubb[ing] Chapman's penis until he was aroused," and taking his hands and placing them on her buttocks and breasts.[4]  Chapman further claims Willis told him she loved him and sent him birthday and Christmas cards.  She also sent him letters, drew him pictures and made up a special code of gestures, including touching her necklace, putting her finger to her lips, and smiling, which she used to communicate "I love you," or "a kiss" when she couldn't speak to him.

      (1) PREA

      There is no basis in law for a private cause of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

      Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. See Ball v. Beckworth, No. CV 11-00037, 2011 U.S. Dist. LEXIS 109529, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." Chinnici v. Edwards, No. 1:07-cv-229, 2008 U.S. Dist. LEXIS

---

[4] Chapman alleges Willis took his hands and placed them on her buttocks "moving them in a circular motion" on October 29, 2010, November 12, 2010 and November 23, 2010.  He further alleges that on February 9, 2011 she took his hands and put them on her buttocks and breasts and "rubbed his penis until [he] was aroused."

119933, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008).  Thus, Plaintiff fails to state a § 1983 claim based on an alleged violation of the PREA. Accord Inscoe v. Yates, No. 1.08-CV-001588, 2009 U.S. Dist. LEXIS 92012, 2009 WL 3617810 (E.D. Cal. Oct. 28, 2009).

Willis has raised qualified immunity as an affirmative defense, entitling her to summary judgment. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendant's conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 201.  If the court determines that the facts alleged, taken in the light most favorable to the plaintiff, do not show that the officer's conduct violated a constitutional right, then the defendant is entitled to summary judgment without further discussion of qualified immunity. Id. at 201.  Because plaintiff cannot show that Willis violated his constitutional or statutory rights under the PREA, Willis is entitled to summary judgment under the first Saucier prong. 533 U.S. at 206. Accordingly, I grant the defendants' motion for summary judgment on plaintiff's PREA claim.

    (2) Eighth Amendment

    "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West, 487 U.S at 48. While Chapman does not specifically state how Willis' sexual acts violate his constitutional rights, the court will construe his complaint as an attempt to bring a claim under the Eighth

8

Amendment.[5]  Defendants argue that, even assuming as true everything Chapman asserts, his relationship with Willis was consensual, and thus does not violate the Constitution.  Defendants further claim that Willis is entitled to the defense of qualified immunity.

The first prong of the qualified immunity analysis is whether—in the light most favorable to plaintiff—plaintiff alleges that Willis undertook conduct that violated plaintiff's constitutional rights. Saucier, 533 U.S. at 201. In a § 1983 claim against a state official under the Eighth Amendment, a plaintiff must demonstrate that (1) the alleged conduct is "objectively, sufficiently serious"; and (2) that the prison official was "deliberately indifferent to the plaintiff's rights, health or safety" and had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (omitting citations).

As to the first prong of the qualified immunity test, it is undisputed in the case law that sexual abuse by a prison guard on an inmate may violate the Eighth Amendment. See Woodford, 548 U.S. at 118 (Breyer, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."); Farmer, 511 U.S. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal citation omitted); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the

---

[5] See Hughes v. Rowe, 449 U.S. 5 (1980) (stating that the pleadings of pro se litigants are accorded liberal construction)

guard or of the prisoner—is deeply 'offensive to human dignity.'") (citing Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991)); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."); see also Roten v. McDonald, No. CIV.A. 08-081-JJF, 2009 U.S. Dist. LEXIS 111960, 2009 WL 4348367, at *4 (D. Del. Nov. 30, 2009) (citing cases), aff'd, 394 F. App'x 836 (3d Cir. 2010).

Courts have recognized, however, that not every allegation of sexual abuse is "objectively, sufficiently serious" for purposes of the Eighth Amendment. See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) ("[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."); Boddie, 105 F.3d at 861 ("[I]solated episodes of harassment and touching . . . are despicable. . . . But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.") (citing Farmer, 511 U.S. at 833-34).  Instead, courts must conduct a fact-intensive, case-by-case inquiry to determine if the sexual abuse was sufficiently serious.

Defendants argue that because Chapman's relationship with Willis was consensual, Willis' actions did not violate his constitutional rights.  Defendants state that Chapman never claims that Willis' actions were unwanted sexual advances, and cite to portions of his complaint that purportedly show he was a willing participant.  Specifically, Chapman does not claim he ever told Willis to stop, and admits he talked to Willis about specific sex acts.  Moreover, Chapman was apparently willing to meet Willis when and where she requested and, at Willis' request, he watched her from his cell window.  Chapman kept his relationship with Willis a secret for six months, until April 2011, not filing a grievance until it appeared he might get in

trouble for the relationship. However, throughout his complaint, Chapman refers to Willis'
touching his penis and placing his hands on her breasts and buttocks as "prison rape." He states
that Willis told him "not to tell anyone about us" and told him it would be "worse for Chapman
th[a]n for her" if anyone found out. (Docket 1, p. 4) In Chapman's response to the defendants'
motion for summary judgment, he states that "he never said this was a consensual relationship"
and emphasizes that Willis, as his counselor for over eight years, was responsible for Chapman's
yearly evaluation and had power and authority over him, as his custodial caretaker. (Docket No.
65-1, p. 5)

This circuit has not yet definitively addressed whether a prisoner can legally consent to a
relationship with a correctional officer. However, some out-of-circuit courts have recognized
that prisoners are incapable of consenting to sexual relationships with a prison official. Lobozzo
v. Colorado Dep't of Corr., 429 F. App'x 707, 711 (10th Cir. 2011) (stating, with no analysis,
"[i]t is uncontested that Lobozzo, an inmate, could not legally consent to sexual activity with
Martinez, a guard"); Carrigan v. Davis, 70 F. Supp. 2d 448 (D. Del. 1999) (concluding that "as a
matter of law . . . the consent defense is  unavailable" to a prison guard who engages in a sexual
act with a prisoner); Cash v. County of Erie, No. 04-cv-0182, 2009 U.S. Dist. LEXIS 91232,
2009 WL 3199558, at *2 (W.D.N.Y. Sept. 30, 2009).[6] The rationale for these decisions rests
primarily on the imbalance of control between prison guards and prisoners.  Wood v. Beauclair,
692 F.3d 1041, 1046-1047 (9th Cir. Idaho 2012) (Even if the prisoner concedes that the sexual
relationship is "voluntary," because sex is often traded for favors, it is difficult to characterize
sexual relationships in prison as truly the product of free choice.)

---

[6] But see Freitas v. Ault, 109 F.3d 1335, 1339 (8th Cir. 1997) (finding a male inmate's allegation that he was
sexually harassed by a female prison employee could not establish an Eighth Amendment claim, because the
relationship was consensual and holding "voluntary sexual interactions, no matter how inappropriate, cannot as a
matter of law constitute 'pain' as contemplated by the Eighth Amendment.").

In any event, at this point I need not address how the Fourth Circuit would decide the
consent issue regarding sexual relationships between prisoners and prison officials because
Chapman denies any admission that his relationship with Willis was consensual, and refers to
Willis' sexual touches as "prison rape." In reviewing defendants' motion for summary
judgment, I must consider the facts and draw all reasonable inferences in the light most favorable
to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587.

Thus, on the facts of the case at bar and consistent with the analysis of other courts, I
conclude that Willis' alleged sexual abuse of Chapman is "objectively, sufficiently serious" for
purposes of the Eighth Amendment. See, e.g., Wood v. Beauclair, 692 F.3d 1041, 1049-51 (9th
Cir. 2012) (allegations that guard "stroked" prisoner's penis for a few seconds for guard's own
gratification satisfied objective and subjective elements of Eighth Amendment claim)[7]; See
Washington v. Hively, 695 F.3d 641, (7th Cir. 2012) ("An unwanted touching of a person's
private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate
a prisoner's constitutional rights whether or not the force exerted by the assailant is
significant.")[8]; Calhoun v. DeTella, 319 F.3d 936, 939-940 (7th Cir. 2003) (allegation that during
a strip search guards "made 'sexual ribald comments,' forced [inmate] to perform 'provocative
acts,' and 'pointed their sticks towards his anal area' while he bent over'" with no allegation of
physical injury, stated an Eighth Amendment claim);   Schwenk, 204 F.3d at 1196-98 (inmate

---

[7] There appears to be an emerging division in the judicial treatment of cases in which an inmate alleges a prison
guard sexually abused him or her. One class of cases focuses on the language in Boddie that limits Eighth
Amendment claims to sexual abuse that is "severe or repetitive," 105 F.3d at 861, and another class focuses more on
"contemporary standards of decency" and the complete lack of penological justification for guard-on-inmate sexual
abuse. See, e.g., Wood, 692 F.3d at 1050-51.

[8] Hively analyzed the detainee's rights under the Fourteenth Amendment, rather than the Eighth Amendment. See
Bell v. Wolfish, 441 U.S. 520, 545 (1979) (the Due Process Clause protections are at least as great as those under
the Eighth Amendment).

stated Eighth Amendment claim where guard repeatedly requested oral sex, groped inmate's buttocks, exposed his genitals to inmate, and forcibly pressed his exposed penis into the inmate's clothed buttocks); Jacobs v. Durko, No. 04-1941, 2007 U.S. Dist. LEXIS 68459, 2007 WL 2769436, at *3-4 (W.D. Pa. Sept. 17, 2007) (allegations that guard "roughly" groped an inmate's buttocks and genitals on a single occasion, not in the course of a patdown search and without any justification, may be sufficiently serious for Eighth Amendment purposes); Bromell v. Idaho Dep't of Corr., No. 05-419, 2006 U.S. Dist. LEXIS 80804, 2006 WL 3197157, at *4 (D. Idaho Oct. 31, 2006) (allegation that guard approached inmate from behind, placed his penis against inmate's clothed buttocks, then squeezed the inmate's pectoral muscles before squeezing the inmate's presumably clothed genitals, states a claim under the Eighth Amendment, observing that "uninvited sexual contact that is done maliciously and sadistically to cause harm and that does not advance any legitimate security interest is the type of conduct that is 'inconsistent with contemporary standards of decency' and, therefore, violates the Eighth Amendment"); Thomas v. Dist. of Columbia, 887 F. Supp. 1, at 3, 4-5 (D.D.C. 1995) (allegation that guard twice forcibly touched or attempted to touch inmate's penis, sexually harassed inmate, and spread rumors that the plaintiff "is a homosexual and a 'snitch'" was sufficiently serious); Ojo v. Hillsborough Cnty. Dep't of Corr., No. 12-cv-204-sm, 2012 U.S. Dist. LEXIS 142509, 2012 WL 4513944, at *2-3 (D.N.H. Sept. 25, 2012)  report and recommendation approved, 2012 U.S. Dist. LEXIS 142513, 2012 WL 4514005, *1 (D.N.H. Oct. 2, 2012) (allegations that guards intentionally "grabbed" an inmate's penis and/or testicles during a patdown search on four occasions stated a claim (under the Fourteenth Amendment, as the inmate was a pretrial detainee)).

     Chapman has alleged, and Willis has not rebutted, that Willis made sexual remarks over

the course of six months, with one instance of stroking his penis and four instances of taking his hands and rubbing them on her breasts and/or buttocks.   Chapman has alleged emotional pain from the incidents, including that he lost 35 pounds, could not eat or sleep and attempted to seek psychological help.  (Docket 1, p. 18).  Chapman alleges that the alleged abuse was both more than de minimus contact and repetitive. See Boddie, 105 F.3d at 861 ("[T]here can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation.") (emphasis added). As such, I find that Chapman's allegations satisfy the first element of the constitutional standard.

The Court also concludes that Chapman has alleged facts on which the factfinder could determine that Willis acted with a "sufficiently culpable state of mind." "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Boddie, 105 F.3d at 861. In cases of sexual abuse or rape, "the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). The court cannot conceive of any legitimate law enforcement or penological purpose behind Willis' alleged sexual comments and groping of Chapman. Thus, the second element of the Eighth Amendment standard is satisfied, which therefore satisfies the first element of the qualified immunity test.

Under the second element of the qualified immunity test, I must determine if the right was clearly established at the time of defendant's actions. Saucier, 533 U.S. at 201. The purpose of this inquiry, and qualified immunity more generally, is to "ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he

contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier, 520 U.S. 259, 270 (1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). With the facts alleged, qualified immunity does not shield Willis from liability under § 1983 for her sexual abuse of Chapman. See Schwenk, 204 F.3d at 1197. ("Thus, the shield that qualified immunity provides is limited to those officials who are either unaware of the risk or who take reasonable measures to counter it. Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers no shield."); see also id. ("In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise."); Turner v. Huibregtse, 421 F. Supp. 2d 1149, 1152-53 (W.D. Wis. 2006) (denying qualified immunity to guards who allegedly touched inmate's buttocks and fondled his penis).

Furthermore, Willis' alleged actions fall within the definition of "rape" in PREA, see 42 U.S.C. § 15609 ("The term 'rape' means the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person, forcibly or against that person's will . . .') and are criminally proscribed by Va. Code Ann. § 18.2-67.4 (An accused is guilty of sexual battery if he sexually abuses an inmate who has been sentenced to confinement in a state or local correctional facility or regional jail, and the accused is an employee with the state or local correctional facility or regional jail; is in a position of authority over the inmate; and knows that the inmate is under the jurisdiction of the state or local correctional facility or regional jail).[9] For these

---

[9] Defendants also state that "fraternization is against VDOC policy." Fraternization is defined as "[t]he act, or giving the appearance of, association with offenders ... that extends to unacceptable, unprofessional and prohibited behavior....Examples include ... engaging in romantic or sexual relationships with offenders." (Docket 52, p. 8, 14)

reasons, I conclude that an inmate's right not to be sexually abused by a prison guard was sufficiently well-established from September 2010 through April 2011 so as to put Willis on notice that her actions violated Chapman's rights.  Accordingly, defendants' motion for summary judgment is denied as to Chapman's Eighth Amendment claim against Willis.  However, for reasons stated, defendants' motion for summary judgment is granted as to plaintiff's claims under PREA, VDOC Operating Procedures and Virginia criminal statutes.

     C.  Claims 2 and 3

     Chapman alleges in claims 2 and 3 that defendants Peters and Lawhorn told him he could not talk to Willis, or he would be placed in segregation, in violation of Chapman's rights to free speech and due process under the First and Fourteenth Amendments.  Chapman states there was "no due process afforded [him] in [defendants'] chilling effect on his First Amendment [rights]." The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).

     Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 822 (1974). Inmates' constitutional rights must be evaluated within the context of their incarceration, and the Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974).  A prison regulation impinging on an inmates' constitutional right to free speech is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); See also Thornburgh

v. Abbott, 490 U.S. 401, 415 (1989) (prison security is a legitimate governmental purpose "central to all other corrections goals").  Factors relevant in determining reasonableness of a regulation include (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation. Id. at 89-91. In weighing these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The prisoner carries the burden of proof under the Turner analysis to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003).

According to defendants, Chapman was ordered not to talk to Willis because she was no longer his counselor and any conversation or interaction would have been non-professional and constituted fraternization, which was prohibited by the VDOC operating procedure.  VDOC has implemented these operating procedures to maintain a strictly professional relationship between employees and inmates and ensure the security and integrity of the correctional system. Furthermore, in the penological interest of security, Peters and Lawhorn were attempting to keep Willis and Chapman separated until the issue of their sexual and romantic relationship was fully investigated.

As previously recognized, prison safety and security are legitimate, neutral governmental purposes. See Thornburgh, 490 U.S. at 415.  Chapman does not state why he needed to speak with Willis, except that she was his counselor for over eight years.  However, he had been assigned a different counselor with whom he could have met regarding any counseling needs during the period at issue.  Accordingly, I find that Chapman has not met his burden under the

17

Turner analysis to disprove the validity of Peters' and Lawhorn's instruction that he not speak with Willis.  Therefore, I will grant defendants' motion for summary judgment as to this claim.

>    D.  Claims 6(c) and 7(c)

In claims 6(c) and 7(c), Chapman alleges defendants Linamen and Jennings transferred Chapman from Augusta to Powhatan in violation of his due process rights and in retaliation for exercising his First Amendment rights.  Chapman alleges that Powhatan is a "dirty, filthy, stinking, roach and rat infested sewer" with cramped cells, no hot water, broken windows, and rampant drug use.  In comparison, Chapman alleges that he was housed in a "pristine single cell" at Augusta.

"In order to prevail on . . . a procedural . . . due process claim, [an inmate] must first demonstrate that [he was] deprived of 'life, liberty, or property' by governmental action." Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). An inmate has no constitutional right to be housed in any particular prison, and prison officials have broad discretion to determine the facility at which an inmate is housed. Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in any of its prisons"); Montanye v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature); but see, Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that, despite general rule that an interprison transfer does not implicate the Due Process Clause, transfer to a so-called

"Supermax" facility at which prisoner would experience exceptionally more onerous conditions did implicate the Due Process Clause).

Inasmuch as Chapman was not held in and has not been transferred to a "Supermax" facility, and he does not have a liberty interest in being incarcerated in any particular facility, I find that he has not stated a due process claim.[10]   Therefore, I grant defendants' motion for summary judgment as to claims 6(c) and 7(c).

III.   Conclusion

Willis' alleged actions, making sexual comments along with one instance of rubbing Chapman's penis and four instances of placing his hands on her breasts and/or buttocks, are not shielded by qualified immunity.  These actions are sufficiently serious for purposes of the Eighth Amendment, and Willis acted with a sufficiently culpable state of mind.  For the reasons stated in this memorandum opinion, I deny defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim against Willis.  However, I grant defendants' motion for summary judgment as to plaintiff's other claims.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: this 28th day of May, 2013.

Senior United States District Judge

---

[10]   Moreover, to state a claim that he has a protected liberty interest related to long-term administrative confinement, an inmate must first allege facts demonstrating that conditions to which he is subject in that confinement status constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  Chapman has not shown that his transfer from Augusta to Powhatan imposed conditions of confinement which constituted an atypical or significant hardship.